IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

```
KATISHA MARIE JOHNSON,          )
                                )
            Plaintiff,          )
                                )
      v.                        )  Case No. 13-1422-RDR
                                )
CAROLYN W. COLVIN,              )
Acting Commissioner of the      )
Social Security Administration, )
                                )
            Defendant.          )
```

**MEMORANDUM AND ORDER**

On July 8, 2011, plaintiff filed applications for social security disability insurance benefits and supplemental security income benefits. These applications alleged a disability onset date of June 24, 2011. On February 28, 2013, a hearing was conducted upon plaintiff's applications. The administrative law judge (ALJ) considered the evidence and decided on July 8, 2013 that plaintiff was not qualified to receive benefits. This decision has been adopted by defendant. This case is now before the court upon plaintiff's motion to reverse and remand the decision to deny plaintiff's applications for benefits.

I.  STANDARD OF REVIEW

To qualify for disability benefits, a claimant must establish that he or she was "disabled" under the Social Security Act, 42 U.S.C. § 423(a)(1)(E), during the time when the claimant had "insured status" under the Social Security program.

See Potter v. Secretary of Health & Human Services, 905 F.2d 1346, 1347 (10th Cir. 1990); 20 C.F.R. §§ 404.130, 404.131. To be "disabled" means that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

For supplemental security income claims, a claimant becomes eligible in the first month where he or she is both disabled and has an application on file. 20 C.F.R. §§ 416.202-03, 416.330, 416.335.

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards. Rebeck v. Barnhart, 317 F.Supp.2d 1263, 1271 (D.Kan. 2004). "Substantial evidence" is "more than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id., quoting Richardson v. Perales, 402 U.S. 389, 401 (1971). The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the defendant's decision. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994) (quoting Casias v. Secretary of Health & Human Services, 933 F.2d 799, 800-01 (10th Cir. 1991)). The court may

not reverse the defendant's choice between two reasonable but conflicting views, even if the court would have made a different choice if the matter were referred to the court de novo. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)).

II.  THE ALJ'S DECISION (Tr. 11-24).

There is a five-step evaluation process followed in these cases which is described in the ALJ's decision.  (Tr. 12-13). First, it is determined whether the claimant is engaging in substantial gainful activity.  Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe."  At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Next, the ALJ determines the claimant's residual functional capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work.  Finally, at the last step of the sequential evaluation process, the ALJ determines whether the claimant is able to do any other work considering his or her residual functional capacity, age, education and work experience.

3

In this case, the ALJ decided plaintiff's application should be denied on the basis of the fifth step of the evaluation process. The ALJ determined that plaintiff maintained the residual functional capacity to perform jobs that exist in significant numbers in the national economy.

The ALJ made the following specific findings in her decision. First, plaintiff meets the insured status requirements for Social Security benefits through December 31, 2011. Second, plaintiff did not engage in substantial gainful activity after June 24, 2011, the alleged onset date of disability. Third, plaintiff has the following severe impairments: morbid obesity; degenerative disc and joint disease of the lumbar spine; status/post left peroneal tendon repair; edema of the lower extremities; chronic recurrent headaches; mild degenerative joint disease in the bilateral knees; depression; and a history of learning disorder. Fourth, plaintiff does not have an impairment or combination of impairments that meet or medically equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Fifth, plaintiff has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except plaintiff can lift 20 pounds occasionally and 10 pounds frequently; can sit for at least 30 minutes at a time and would then need to stand briefly; can stand for 15-20 minutes at a

time; should never climb ladders, ropes or scaffolds; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; can understand simple and some intermediate instructions, and has the ability to carry out simple and some intermediate instructions with adequate pace and persistence; and should not work with the general public.

Finally, the ALJ determined that plaintiff is able to perform substantial gainful employment in the form of such jobs as:  final assembler, optical; and taper-circuit layout.  The ALJ based this decision in part upon answers given by a vocational expert.

III.  PLAINTIFF'S ARGUMENTS DO NOT WARRANT REVERSING THE DECISION TO DENY BENEFITS.

Plaintiff's opening brief lists two arguments in support of her claim that the denial of benefits should be reversed and remanded:  first, that the ALJ failed to assign analytical weight to a treating provider, Dr. Mark D. Goodman, a psychologist; and second, that the ALJ failed to identify by name the state psychological consultants whose opinions were given significant weight.  A third argument relating to credibility analysis is raised somewhat fleetingly in the summary of the opening brief, and a broad, but cursory challenge to the substantiation in support of the ALJ's decision is also

5

contained in the summary. The court shall address these arguments in order.

A. <u>The ALJ's failure to assign analytical weight to a treating psychologist's opinion does not require reversal</u>.

Plaintiff's first argument is that the ALJ failed to assign analytical weight to the opinion of a treating source, Dr. Mark D. Goodman. Plaintiff made several visits to Dr. Goodman in the second half of 2011. (Tr. 622, 638-663, 669, 700-721). Dr. Goodman initially diagnosed plaintiff with major depression, but later changed his diagnosis to dysthymia with bipolar features. Reports from the visits indicate that plaintiff had poor self-esteem and that she felt lonely, worried, pessimistic, insecure and helpless. She had problems with concentration, anger, irritability, and general unhappiness. Plaintiff's obesity and financial challenges led to some portion of these feelings. Plaintiff was not delusional according to Dr. Goodman. Plaintiff reported that she took care of her four children and that she did chores, shopping and laundry. (Tr. 701). She also visited with relatives and friends. <u>Id.</u> For a brief spell in October 2011, plaintiff's children were removed from her home temporarily by state agents because plaintiff's home was unclean. Naturally, this was quite upsetting to plaintiff. But, a month later, she reported to Dr. Goodman that she had had a very good Thanksgiving (Tr. 721) and some weeks earlier, on

6

August 8, 2011, plaintiff told Dr. Goodman that things were going "relatively well for her overall." (Tr.712). Dr. Goodman listed plaintiff's GAF from 53 to the upper fifties while plaintiff was visiting him.[1] Dr. Goodman did not make any detailed findings regarding plaintiff's functional limitations in such areas as: understanding instructions; getting along with fellow workers or supervisors; being able to concentrate; or the ability to complete a normal workday.

The ALJ concluded that plaintiff had mild difficulties in the activities of daily living because of her mental impairments. (Tr. 15-16). She also determined that plaintiff had moderate difficulties in social functioning and in concentration, persistence or pace. (Tr. 16). The ALJ summarized plaintiff's initial session with Dr. Goodman in July 2011 (Tr. 18) and referenced the doctor's reports from October and November 2011 later in her decision. (Tr. 19). There is no indication in the decision that the ALJ disagreed with Dr. Goodman's findings.

The ALJ's decision gave significant weight to the mental residual functional capacity assessments of state agency psychological consultants which, the ALJ concluded, were

---

[1] A GAF score of 51 to 60 "indicates 'moderate symptoms,' or 'moderate difficulty in social, occupational, or school functioning.'" Royal v. Astrue, 2007 WL 1475276 *1 (10th Cir. 2007)(quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (2000)).

"consistent with the evidence of record, including the testimony from [plaintiff] that she is able to work with depression and her learning disability." (Tr. 22). The ALJ did not name the consultants, but identified their assessments as Exhibits D4A and D8A. These assessments indicated that plaintiff was moderately limited in her ability to maintain concentration for extended periods and in her ability to carry out detailed instructions, and that she was moderately limited in her ability to interact with the general public. The assessments also concluded that plaintiff was not significantly limited in the following areas: in her ability to carry out very short and simple instructions; in her ability to perform activities within a schedule; in being able to maintain regular attendance and be punctual; in her capacity to sustain an ordinary routine without special supervision; in the ability to make simple work-related decisions; in relating appropriately with coworkers; in accepting instructions and criticism from supervisors; and in her capacity to maintain socially appropriate behavior. (Tr. 90-91, 130-31).

Plaintiff contends that the ALJ erred by not expressly assigning a weight to the opinion of Dr. Goodman. But, the authorities cited by plaintiff involve situations in which the opinion of a treating doctor conflicted with the RFC assessment of the ALJ or with medical evidence relied upon by the ALJ. For

8

instance, plaintiff cites SSR-96-8p which provides: "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." 1996 WL 374184 at *7 (emphasis added). Plaintiff also cites: Martinez v. Astrue, 422 Fed.Appx. 719 (10th Cir. 2011); Knight v. Astrue, 388 Fed.Appx. 768, 771 (10th Cir. 7/21/2010); Victory v. Barnhart, 121 Fed.Appx. 819, 825 (10th Cir. 2/4/2005); Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004); and Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). In each of these cases, the ALJs were alleged either to have failed to properly evaluate medical evidence from a treating physician which was contrary to the conclusions drawn by the ALJs or to have failed to discuss or refer to such evidence altogether. We agree with defendant that these cases are distinguishable here where the ALJ discussed Dr. Goodman's treatment of plaintiff and where there is no indication that Dr. Goodman's conclusions are contrary to the findings of the ALJ. See Roybal v. Astrue, 224 Fed.Appx. 843, 847 (10th Cir. 5/22/2007)(the need to weigh evidence is weakened when the evidence is not unfavorable to the ALJ's conclusions); see also, Mays v. Colvin, 739 F.3d 569, 578-79 (10th Cir. 2014)(failure to discuss and weigh state agency medical consultants' opinions is harmless where the opinions do not conflict with the ALJ's RFC findings).

Plaintiff's reply brief accuses the ALJ of failing to discuss Dr. Goodman's notation that plaintiff cried uncontrollably during a visit in which she told Dr. Goodman that state officers and the police took her children away because her home was filthy. Doc. No. 22, p. 3. But, this incident is discussed in the ALJ's decision. (Tr. 19). Plaintiff's reply brief also argues that the ALJ failed to discuss Dr. Goodman's remark after one visit on October 12, 2011, that it would be important for plaintiff to work on her personal hygiene because she had a pronounced foul body odor. (Tr. 718). Plaintiff is correct that this notation is not mentioned in the ALJ's decision. This was the only time that plaintiff's personal hygiene is mentioned as an issue by Dr. Goodman. In other reports, Dr. Goodman stated that plaintiff bathed daily and took pride in her appearance (Tr. 701), and that she was clean and adequately dressed and groomed (Tr. 703). The court agrees with defendant that a one-time observation regarding personal hygiene does not indicate a severe restriction in plaintiff's ability to care for herself or in plaintiff's social functioning. We note as well the ALJ rated plaintiff as moderately limited in social functioning which seems consistent with Dr. Goodman's GAF scores.

An ALJ is obliged to discuss uncontroverted evidence which he does not rely upon and significantly probative evidence which

he rejects. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). But, such evidence must have significance to the issues in the case. See Mays, 739 F.3d at 576-77 (rejecting argument of selective review of the evidence where plaintiff does not show the ALJ ignored significantly probative evidence); Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166 (10th Cir. 2012)(technical omissions from ALJ's discussion do not dictate reversal); Wilson v. Astrue, 602 F.3d 1136, 1148 (10th Cir. 2010)(ALJ is not required to reference everything in the administrative record, including entry reports from mental health therapists). Plaintiff has not demonstrated that the ALJ ignored significant evidence in this case.

    B. <u>The ALJ adequately identified the state agency psychological consultants whose opinions were given significant weight</u>.

Plaintiff's second argument to reverse and remand the decision to deny benefits is that the ALJ failed to adequately explain her decision because she did not identify by name the "[s]tate agency psychological consultants" whose "mental residual functional capacity assessments" were given "significant weight." (Tr. 22) Plaintiff fails to cite case authority or regulations which hold that reference to exhibit numbers and the "mental residual capacity assessments" in those exhibits is legally insufficient to explain an ALJ's decision. In this instance, we find that the ALJ's decision is clear and

11

capable of meaningful review. Therefore, the court shall deny plaintiff's second argument to reverse and remand.

C. <u>The ALJ's credibility analysis of plaintiff's testimony satisfies the legal standard</u>.

In the summary to plaintiff's opening brief, plaintiff argues that the ALJ ignored plaintiff's credible testimony that her ability to stand was limited to 15 to 20 minutes before she would have to sit down to seek relief. But, that limitation is contained in the ALJ's RFC formulation. The ALJ found that plaintiff could "stand for 15-20 minutes at a time." (Tr. 16). Plaintiff acknowledges this but contends that the ALJ did not include plaintiff's need to sit down after standing for an extended period. The court rejects this point. The ALJ acknowledged plaintiff's need to alternate positions in her decision. (Tr. 21). The court agrees with defendant that plaintiff's need to sit after standing for 15-20 minutes at a time is implicitly reflected in the ALJ's RFC findings.

Plaintiff also argues in the summary to her opening brief that the ALJ ignored her testimony that she needed to elevate her legs eight to ten times daily, sometimes for 30 minutes. The ALJ acknowledged plaintiff's complaints of ankle pain and bilateral leg edema as well as other aspects of plaintiff's testimony at page 17 of the record and in other portions of the decision. The ALJ made a finding that plaintiff's statements

12

regarding the intensity, persistence and limiting effects of her symptoms were not entirely credible. (Tr. 17). The ALJ did not expressly discuss plaintiff's alleged need to elevate her legs. But, she did note that plaintiff was able to perform daily activities, including household chores and caring for four children, with no more than a mild limitation. (Tr. 17). The ALJ noted that plaintiff had no complaints of left ankle pain or other problems during a February 2010 doctor's visit following ankle surgery. (Tr. 18). The ALJ also noted that in a September 2011 examination, plaintiff reported intermittent lower extremity edema occurring three times a week for which plaintiff was on Lasix management and that a doctor's examination found trace peripheral edema. (Tr. 19). The ALJ referenced soft tissue edema found during an examination in May 2012 (Tr. 19) and swelling of the foot and lower leg on July 24, 2012, but noted that there was no edema found during other examinations conducted in June and July 2012 (Tr. 20). Exhibits cited by the ALJ referenced later doctor's examinations which reported that there was no edema. (Tr. 20, citing exhibits D31F and D32F).

    The ALJ stated that she reviewed the evidence, including plaintiff's allegations and testimony. (Tr. 22). The ALJ also recognized that a claimant's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the

13

objective medical evidence alone. (Tr. 20). In this vein, the ALJ listed factors she considered in evaluating plaintiff's credibility, including activities of daily living; the location, duration and frequency of pain and other symptoms; and the effectiveness of medication and other measures to alleviate pain. (Tr. 20-21). The ALJ referred to her review of the evidence and plaintiff's ability to perform daily activities, including chores and child care, to support her conclusions regarding plaintiff's credibility. (Tr. 17-18). It is implicit in the ALJ's decision that this review of the evidence led the ALJ to conclude that plaintiff's alleged need to elevate her legs eight to ten times daily was not credible.

The court believes the ALJ's review of the evidence and explanation of her decision are sufficiently clear for the court to meaningfully review the ALJ's credibility analysis. It is not required that an ALJ designate every statement that he or she finds credible and every statement which he or she finds incredible. Keyes-Zachary, 695 F.3d at 1169-70. It is sufficient if an ALJ indicates the extent to which he or she credits the alleged limiting effects of a claimant's symptoms and explains the factors considered in making that determination. Id.; see also, Moua v. Colvin, 541 Fed.Appx. 794, 800 (10th Cir. 2013)(use of boilerplate language in credibility analysis does not require reversal when the ALJ's

14

decision refers to specific evidence).  The court believes the ALJ accomplished that in her decision by listing plaintiff's limitations in the RFC findings and discussing the evidence and reasons that support the RFC findings, including the evidence relating to edema and ankle pain.

    D.   <u>Plaintiff's broad challenge to the substantiation for the ALJ's decision does not merit reversal of the decision to deny benefits.</u>

Finally, plaintiff suggests that if the court scrutinizes or examines the entire record, the court will find that evidence has been ignored by the ALJ or that substantial evidence does not support the ALJ's decision.  Doc. No. 16, p. 29.  For the most part, however, plaintiff does not specify what evidence was ignored or why substantial evidence does not support the ALJ's decision.  Where plaintiff has been specific, the court has already discussed and ruled upon plaintiff's arguments.  Beyond that, the court will not address plaintiff's undeveloped attack upon the decision to deny benefits.  See <u>Mays</u>, 739 F.3d at 575-76.

IV. CONCLUSION

In conclusion, for the above-stated reasons the court shall affirm defendant's decision to deny plaintiff's application for benefits.

15

**IT IS SO ORDERED.**

Dated this 2nd day of October, 2014, at Topeka, Kansas.

                                        s/RICHARD D. ROGERS  
                                      Richard D. Rogers  
                                      United States District Judge